**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Respondent,**

v.

**Robert WEBER, Defendant–Appellant.**

No. 53250.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 14, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1989.

Stephen H. Gilmore, St. Louis, for defendant-appellant.

Byron S. Bier, Clayton, Joseph Pascal Sommer, Carol T. Clark, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

Robert Weber appeals from a judgment of the trial court, pursuant to a jury verdict, wherein State Farm Mutual Automobile Insurance Company ("State Farm") was awarded $2990.02 actual damages and $3000.00 punitive damages.[1] The jury determined that Weber had been a participant in a conspiracy to defraud State Farm. We affirm.

Weber owned a 1980 Jeep which was insured by State Farm. The Jeep was apparently stolen sometime between 1:00 and 11:45 a.m. on Sunday, July 18, 1982. Weber reported the theft to the St. Louis County Police Department and to State Farm. State Farm paid the total amount of the claim, $5971.22, to GMAC, the lienholder. After the jeep was recovered, State Farm sold it for salvage and took a net loss of $2990.00.

The Jeep was found on the farm of Benjamin D'Amico in Lincoln County approximately eight months after it was stolen. A 1975 Camaro automobile, which was reported by the Firoved defendants as stolen, was also found on D'Amico's farm.

All of the defendants, with the exception of Jean Firoved, had worked together in the same factory at Lincoln Engineering. D'Amico owned the home the Firoveds lived in. Weber and the Firoveds met two times after the Firoveds had been served with the petition, but before Weber had received his. All the defendants, including Weber, were implicated by D'Amico after they denied any involvement in the alleged conspiracy.

State Farm sued the defendants in eleven counts. Weber was sued in Count V for breach of contract under the insurance policy; in Count VI for rescission of the policy; and, in Count VII for fraudulent misrepresentation. All of the defendants were named in Count XI for conspiracy.

The jury returned a verdict against Weber for $2990.02 actual damages and $3000.00 punitive damages on the conspiracy count. No damages were assessed against Weber on the misrepresentation count. The jury did not assess actual damages against D'Amico on the conspiracy count, but did find $3000.00 punitive damages. Verdicts similar to those against Weber were returned against the Firoveds.

Weber filed a separate motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied and this appeal followed.

Weber raises five points on appeal: 1) The trial court erred in failing to sustain Weber's motion for directed verdict at the close of all the evidence because State Farm failed to make a submissible case of conspiracy; 2) The trial court erred in submitting Instruction No. 5 which defined the term "fair market value" when that term was not used in any of the other instructions; 3) The trial court erred in accepting the inconsistent verdicts of the jury wherein they found actual damages against Weber but not against D'Amico on the conspiracy count; 4) The trial court committed plain error when it denied Weber's motion for a new trial after the trial court permitted evidence of Weber's refusal to take a lie detector test before the jury; and, 5) The trial court erred in submitting Instruction No. 11 to the jury for actual damages on the conspiracy count because damages were not proven.

In his first point, Weber argues that State Farm failed to prove the conspiracy theory that was pled. Count XI, paragraph 2 of State Farm's petition read, "That all defendants hereinmentioned, conspired and agreed and pursuant to a mutual act, procurement or design among and between all defendants, the said false insurance claims were made." Weber claims that State Farm failed to show that *all* of the defendants conspired together to defraud State Farm.

■ State Farm had the burden of proving a conspiracy by clear and convincing evidence. *Willett v. Reorganized School District No. 2 of Osage County,*

---

1. Weber was one of four defendants. The others, Benjamin D'Amico, Lawrence Firoved and Jean Firoved, have not appealed.

602 S.W.2d 44, 49 (Mo.App.1980). To determine if State Farm made a submissible case, we regard the evidence in a light most favorable to State Farm, giving it the benefit of all reasonable inferences, and disregarding Weber's evidence except insofar as it aids State Farm's case. *Franklin v. Mercantile Trust Company, N.A.,* 650 S.W.2d 644, 648 (Mo.App.1983). After reviewing the evidence in this light, we find Weber's point to be without merit.

■ In order for us to find a civil conspiracy there must be: two or more persons involved; an object to be accomplished; a meeting of minds on the object or course of action; one or more unlawful acts; and, damages as the proximate result thereof. *Dickey v. Johnson,* 532 S.W.2d 487, 502 (Mo.App.1975). It is not necessary to prove each participant in the conspiracy knew the entire plan or knew the identity of all the other conspirators. *Lenard v. Argento,* 699 F.2d 874, 882 (7th Cir.1983). While the participants must share the same objective, they need not know every detail of the plan. A general knowledge of the essential nature of it will suffice. *Id.* at 882–883.

■ State Farm presented sufficient evidence to show each person involved had ample knowledge of the general plan to defraud State Farm. In fact, Weber's attorney admitted the following before this court:

> Whether or not there was any conspiratorial acts by and between the three named defendants in the case, namely D'Amico, Firoved and my client Weber. There is evidence, of course, between D'Amico and Weber. There is evidence of a separate type incident between D'Amico and Firoveds....

State Farm has, therefore, met its burden of proof. The fact that Weber may not have been aware of the Firoveds' involvement, and vice versa, is inconsequential. Point I is denied.

■ Weber's second point claims that the trial court committed reversible error when it defined the term "fair market value" in Instruction No. 5 because that term

was not used in any other instruction. Weber failed to follow Rule 84.04(e) wherein it states, "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Such omission would authorize us to decline to consider the issue. *Aluminum Products Enterprises, Inc. v. Fuhrmann Tooling and Manufacturing Co.,* 758 S.W.2d 119, 124 (Mo.App.1988).

■ We have, nevertheless, reviewed the instruction pursuant to Rule 84.13(c), the plain error standard, and have concluded that the instruction was not prejudicial since the amount of actual damages awarded conformed to the evidence. Any error was, therefore, harmless and does not mandate reversal.

Weber's third point asserts that the trial court erred in accepting inconsistent verdicts from the jury. In their verdicts, the jury assessed actual damages against Weber on the conspiracy count but not against D'Amico, the co-conspirator.

■ State Farm does not deny that the verdicts are inconsistent. Our Supreme Court has recently held, however, that a verdict which is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged or else the claim of inconsistency is waived. *Douglass v. Safire,* 712 S.W.2d 373, 374 (Mo. banc 1986). This is required in order to give the trial court the opportunity to correct any infirmity in the verdict while correction is still possible. *Id.* This rule is procedural and is applied prospectively only. *Jorgensen v. City of Kansas City,* 725 S.W.2d 98, 105 (Mo.App.1987).

■ This case was tried after *Douglass* was decided, so the holding applies. Weber failed to object to the inconsistent verdicts before the jury was discharged. The objection was waived and is, therefore, not properly before this court.

■ In his fourth point, Weber asks that we review the denial of his motion for new trial under the plain error standard, Rule 84.13(c). Weber had filed a motion in limine which prohibited any references to lie detector tests during the trial and, in

particular, during examination of Weber. Prior to trial, State Farm's attorney stated on the record that he did not intend to get into the question of lie detector tests or Weber's conversation with the police. On cross-examination of Weber, however, State Farm's attorney asked Weber, "Were you asked by anybody to undergo any kind analysis (sic) to determine if you are telling the truth?" Weber moved for a mistrial, but subsequently withdrew the request. The trial judge admonished the jurors to disregard State Farm's question.

Weber attempts to distinguish *Olsten v. Susman,* 391 S.W.2d 328 (Mo.1965) which held that when a trial court grants all the remedial action requested, the party cannot complain that the trial court should have done something more. *Id.* at 330. He contends that the withdrawal of his motion for mistrial was not a matter of trial tactics, but was the result of the economics of the situation as the trial was then in its seventh day. We fail to see the distinction.

Weber knowingly withdrew his request for mistrial and knew the consequences of his actions. Whatever his reasons might have been, by his own conduct he acquiesced in what he now alleges is error. *Hilton v. Crouch,* 627 S.W.2d 99, 102 (Mo. App.1982). We fail to see what prejudice Weber suffered by receiving the relief he requested. Point IV is, therefore, denied.

In his final point Weber alleges that Instruction No. 11 was submitted in error. Once again Rule 84.04(e) was not complied with, and we review for plain error.

Instruction No. 11 referred to actual damages. We have reviewed the instruction and the evidence and, as in Point II *supra,* conclude that Weber suffered no prejudice since the amount of actual damages awarded conformed to the evidence. Point V is denied.

The judgment of the trial court is affirmed.

SMITH, P.J., and SATZ, J., concur.