

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

PATRICIA C. BEREZO,

    Appellant,

vs.

LALO BEREZO, ET AL.,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)

No. ED109192

Appeal from the Circuit Court of
St. Louis County

Honorable Ellen S. Levy

Filed: June 4, 2021

## Introduction

Patricia Berezo ("Appellant") appeals the trial court's grant of summary judgment, motion to dismiss to Lalo Berezo ("Respondent"), and denying Appellant access to funds held in trust for her late husband, Michael Berezo ("Decedent").

Appellant raises four points on appeal. In Point I, Appellant argues the trial court erred granting Respondent summary judgment, concluding Decedent's references to his "wife" in the trust instrument did not entitle Appellant to the funds in the trust. In Point II, Appellant argues the trial court erred dismissing one of her claims, concluding a proposed amendment to the trust – which would have made Appellant a beneficiary – never took effect. In Point III, Appellant argues the trial court erred granting Respondent summary judgment, concluding Appellant is not entitled to access the trust funds as an omitted spouse. In Point IV, Appellant argues the trial

court erred by awarding attorneys' fees to Respondent and denying Appellant's motion for attorneys' fees.

We affirm.

## Factual and Procedural Background

Decedent established the "Michael W. Berezo Revocable Trust" ("the Trust") in 1996, while he was married to his first wife, Alene. Decedent and Alene were married until Alene's death in June 2012. Decedent and Alene have an adult daughter, Alison. Alison is disabled and unable to care for herself. Alison is a beneficiary of the Trust. Her care is also funded by a separate, special needs trust and government assistance.

In August 2012, Decedent amended the Trust ("the Second Amendment"). The Second Amendment stated, "Alene V. Haskell died on June 15, 2012," established Decedent as the sole trustee, and named Decedent's brother Lalo – Respondent – as successor trustee.[1] The amended Trust nevertheless retained numerous references to Decedent's "wife."

Appellant and Decedent married on March 8, 2014. After marrying, Decedent, Appellant, and their attorneys worked to update the Trust to include Appellant. Decedent died unexpectedly on November 30, 2014 without amending the Trust.

From December 2014 to March 2015, attorney Michael Silver of the Husch Blackwell law firm represented Appellant personally and Respondent as successor trustee of the Trust. Appellant alleges Silver advised her she would be entitled to an elective share of Decedent's assets worth approximately $2.3 million, even if she was not included in the Trust. Appellant also alleges Silver advised Appellant to take a $500,000 loan from the Trust to finance the purchase of a new house. On March 4, 2015, Silver terminated Husch Blackwell's representation of Appellant but continued to represent Respondent in his capacity as trustee.

---

[1] The August 2012 amendment was the Second Amendment to the Trust. The First Amendment was made in 2010.

Appellant retained new counsel and filed a declaratory judgment action on September 8, 2015, asking the court to find she was entitled to one half the value of Decedent's estate, including the assets in the Trust under section 474.010.[2] Respondent argued section 474.010 entitled Appellant to one half the value of Decedent's probate estate, but *not* the assets in the Trust. In response, Appellant filed her first amended petition in January 2016, adding Silver and Husch Blackwell as defendants. In December 2016, Appellant filed her second amended petition, claiming (1) Appellant is a beneficiary of the Trust as Decedent's wife; (2) the never-executed Third Amendment to and Restatement of the Trust expressed Decedent's intent and was valid; (3) the Third Amendment to the Trust was valid and effective; (4) there was an oral agreement between Appellant and Decedent for Appellant to be added to the Trust; (5) if the Third Amendment to the Trust was not effective, Appellant was an omitted spouse entitled to a share of the augmented estate; (6) for an accounting of the Trust assets; (7) for discovery of assets and to establish a constructive trust; (8) promissory estoppel prevents Respondent from arguing Appellant was not entitled to recover $2.3 million dollars from the Trust; (9) negligent misrepresentation against Husch Blackwell and Michael Silver; and (10) breach of trust, breach of fiduciary duty, and for disgorgement of fees against Husch Blackwell, Silver, and Respondent.

In June 2017, the trial court dismissed Appellant's claims about the validity of the Third Amendment to the Trust, her claimed oral agreement with Decedent, and her requests for an accounting and constructive trust. In November 2017, the court granted summary judgment to Respondent on Appellant's claim she was the "wife" in the Trust, for promissory estoppel, and for breach of trust against Respondent. The court also granted partial summary judgment to Respondent on Appellant's omitted spouse claim.

---

[2] All statutory references are to RSMo (2015), unless otherwise indicated.

In January 2019, the trial court held a hearing on the parties' requests for attorneys' fees. On March 4, 2020, the trial court denied Appellant's request for fees and granted Respondent $582,418.43 in fees. The trial court found Appellant's "objective in this litigation has been to pierce [Decedent's] Trust to obtain a share of the assets held in the Trust in an amount far greater [than] she was entitled to through the exercise of her statutory inheritance rights under applicable probate law." The court further found Appellant's claim Respondent, Silver, and Husch Blackwell conspired "to deprive [Appellant] of an inheritance right" was baseless. The trial court concluded Appellant was "an omitted spouse, nothing more and nothing less . . . . entitled to an intestate share of her deceased husband's probate estate," but *not* assets held outside the probate estate, including assets in the Trust.

The trial court found Appellant's conduct during the litigation was vexatious and justified awarding fees to Respondent. Specifically, the court found Appellant pursued "multiple and conflicting theories of recovery," "propounded voluminous discovery . . . despite the court's findings regarding the lack of merit in [Appellant's] claims," and "sought reconsideration of many of the court's motion rulings and judgments, all of which has significantly increased the cost of defending the action." The court further found Appellant "changed arguments presented in the original proceedings, mischaracterized the Court's statements in those rulings and judgments, and attempted to change or introduce new or different facts on reconsideration . . . . without any concern for the expenses being incurred by [the Trust] or the interest of its innocent beneficiary, [Alison]."

This appeal follows.[3] Additional factual and procedural history will be provided below as necessary to address Movant's claims.

---

[3] The only issues on appeal are Appellant's claims (1) she is a beneficiary of the Trust as decedent's wife and Respondent is liable for breach of trust; (2) the never-executed Third Amendment to the Trust is valid and effective;

**Standard of Review**

1. Summary Judgment (Points I and III)

The standard of review on summary judgment is essentially *de novo*. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). When considering appeals from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id.* (citing *Zafft v. Eli Lilly*, 676 S.W.2d 241, 244 (Mo. banc 1984)). We accord the nonmoving party the benefit of all reasonable inferences from the record. *Id.* at 376 (citing *Martin v. City of Washington*, 848 S.W.2d 487, 489 (Mo. banc 1993)). We will affirm summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Germania Bank v. Thomas*, 810 S.W.2d 102, 105 (Mo. App. 1991).

2. Motion to Dismiss (Point II)

We review the grant of a motion to dismiss *de novo*. *Lang v. Goldsworthy*, 470 S.W.3d 748, 750 (Mo. banc 2015). We will affirm if the dismissal can be sustained on any ground raised in the motion to dismiss. *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011).

**Discussion**

*Point I: The Trial Court did not Err by Granting Summary Judgment Finding Appellant is not a Beneficiary of the Trust and Lacks Standing to Pursue a Breach of Trust Claim Against Respondent*

Appellant's declaratory judgment action asked the trial court to find Appellant was a beneficiary of the Trust as "Grantor's Wife." In its November 22, 2017 order, the trial court

---

(3) Appellant qualifies to inherit from the trust as an omitted spouse; and (4) the trial court erred by awarding attorneys' fees to Respondent. The claims against Husch Blackwell and Michael Silver were severed and are being litigated separately. The other counts against Respondent were resolved by the trial court in Respondent's favor, were not appealed, and are not before us.

granted summary judgment to Respondent, finding Appellant was not "Grantor's wife" as a matter of law. The trial court concluded Appellant was not entitled to inherit from the Trust.

In Point I, Appellant argues summary judgment was improper regarding her status as a beneficiary of the Trust as "Grantor's wife." Appellant argues the trial court erred by finding the Trust excluded her as a matter of law because the Trust is ambiguous in two respects: (1) whether Decedent intended the Trust's benefits for "Grantor's wife" to (a) only apply to Alene or (b) apply to whomever Decedent was married at his death and (2) whether the Trust's definition of "Grantor's wife" must be interpreted to maximize the Trust's tax savings. We will affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thomas*, 810 S.W.2d at 105.

Appellant argued to the trial court she replaced Alene as "Grantor's wife" in the Trust when she married Decedent and was therefore a beneficiary. The trial court granted summary judgment to Respondent, finding Appellant was not a beneficiary of the Trust and was not entitled to pierce it. The court granted summary judgment because it found the meaning of "Grantor's wife" in the Trust was unambiguously limited to Decedent's first wife, Alene, and did not extend to Appellant as a matter of law. The trial court relied on the facts (1) Alene was alive when the Trust and its first amendment was executed, (2) the Trust referred to Alene by name as the "Grantor's wife" beneficiary, and (3) there were provisions in the Trust that contemplated Alene predeceasing Decedent. The court concluded Appellant's broader reading of "Grantor's wife" was incorrect because it:

> disregard[ed] all references to Alene . . ., disregard[ed] all of the directions therein
>
> for administration and distribution in the event Alene predeceased [Decedent];
>
> and, [ascribed] to [Decedent] an intention in 2012 that is clearly not reflected in

6

the words he used solely for the purpose of fashioning new directions for administration and distribution of the Trust to accommodate a subsequent event, i.e. his marriage to [Appellant], that did not exist and was not even contemplated . . . . Such an endeavor would require the court to rewrite the Trust.

### A. References to "Wife" After Alene's Death

Appellant first argues Respondent was not entitled to summary judgment because Decedent amended the Trust after Alene's death and did not delete all references to his wife. Appellant notes the versions of the Trust preceding Alene's death identified Alene by name as Decedent's wife yet argues the Trust did not "define the term 'wife' as a specific person or otherwise contain language that [Decedent] intended to restrict 'wife' to mean 'Alene.'" Appellant argues the Second Amendment supports her interpretation because the Second Amendment acknowledges Alene's death, yet retains references to "wife" throughout the Trust. Appellant notes the Second Amendment could have removed all references to "wife," but did not. Appellant reasons the Trust was intended to provide for Decedent's widow if he remarried, which she argues is supported by the draft Third Amendment he was editing before his death.

Appellant concludes the trial court incorrectly found the Trust's references to Decedent's wife unambiguously referred to Alene only and excluded any subsequent spouses Decedent might have. Appellant asks this Court to either (1) conclude the Trust is ambiguous and remand for the trial court to consider extrinsic evidence or (2) conclude the Trust unambiguously provides for Appellant as Decedent's wife.

Respondent argues the trial court correctly found Decedent intended to limit the Trust's definition of "wife" to Alene. Respondent notes the Trust states: "[t]he Trustee shall hold and administer the [Trust] . . . for the lifetime benefit of Grantor's wife, ALENE V. HASKELL . . . ."

7

Respondent emphasizes the Trust refers to Alene by name and granted her only a lifetime benefit, arguing these words indicate Decedent intended to narrowly define "wife" as Alene and provide for her specifically until death. Respondent argues the trial court correctly concluded the fact the Trust named Alene specifically as the primary beneficiary "obviated the need to amend the entire First Amendment and Restatement to remove each and every reference to Alene by name or by generic reference."

We agree. "In determining the meaning of a trust provision, the paramount rule of construction is that the settlor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole." *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 443 (Mo. App. W.D. 2004). "We endeavor to ascertain the settlor's intent *at the time of the creation of the trust*." *Id*. (emphasis added). We must limit our review to "what the [testator] actually says and not by what we might imagine the testator intended to say or would have said if he had decided to further explain his intention." *Id*. If "a remainder interest (whether vested or contingent) is conditioned on survival, then the interest is completely lost if a beneficiary fails to survive until the preceding interests are terminated and the time has come for the beneficiary to possess and enjoy the property." *Alexander v. UMB Bank, NA*, 497 S.W.3d 323, 328–29 (Mo. App. W.D. 2016).

Appellant's attempts to parse whether the Trust "defined" Alene as Decedent's wife or merely "identified" her are unpersuasive. Decedent devoted two sections of the Trust to provisions for Alene and deleted them after her death. We will not rewrite the Trust's words under the guise of construction. *Blasdel*, 141 S.W.3d at 445. Alene's life interest in the Trust terminated at her death and was not transferable to Appellant. *Alexander*, 497 S.W.3d at 328-

29.[4]  We find no error in the trial court's conclusion the Trust's references to Decedent's wife unambiguously were limited to Alene and not to unknown, future spouses.

## B. Marital Deduction

Appellant next argues the trial court's reading of the Trust was inconsistent with Decedent's intent because "[Decedent] expressly directed that his overriding purpose in his Trust documents was to qualify for the 'marital deduction.'"  Appellant argues Decedent's intent to qualify for the marital deduction could only be met if the Trust applied to Decedent's wife at his death.  Appellant relies on a provision in the Trust which states:

> It is the Grantor's intent that the Marital Trusts and any distribution made to the Marital Trusts shall fully qualify for the allowance of a marital deduction to the Grantor's estate for Estate Tax purposes. Therefore, all provisions of the Trust Agreement, including those granting powers of management and control of trust assets to the Trustee, shall be construed and administered so as to carry out this intent, and any provision inconsistent with this intent shall be void.

Appellant argues Decedent's intent to achieve the marital deduction should have been the starting point of the trial court's analysis in determining whether the Trust was ambiguous. Appellant reasons Decedent wanted the Trust to receive the marital deduction after his death, regardless of whether he was married to Alene or someone else.  Appellant concludes the trial court's interpretation of the Trust prevented Decedent from achieving his tax objectives, contravening his intent.

---

[4] The trial court accurately noted Appellant's position on this point was inconsistent throughout the litigation. Appellant's initial petition and first amended petition conceded she was omitted from the Trust.  Further, Appellant's efforts to get Decedent to execute a third amendment to the Trust before his death would have been unnecessary if the Trust already provided for her through its references to [Decedent]'s wife.

9

Respondent argues Appellant's interpretation of the marital deduction provision contradicts the intent of the Trust when read as a whole. Respondent argues tax objectives were not Decedent's primary concern, noting the Trust contemplated Alene predeceasing Decedent and provided an alternative distribution plan for Alison to become the primary beneficiary. Further, Article II, Section C of the Trust provides alternative instructions for distribution of the Trust's assets, depending on whether Alene predeceased Decedent. Specifically, Respondent notes the Trust provided if Alene predeceased Decedent, the Marital Trust was to be left unfunded. Respondent argues the trial court correctly determined Decedent understood his tax objectives were subject to "the vicissitudes of life" and, taken as a whole, the Trust was not intended to automatically substitute unknown future spouses into Alene's position in the Trust if she died and Decedent remarried.

As in section A, we agree with the trial court's conclusion Appellant's interpretation would require us to rewrite the Trust by disregarding the Trust's specific references to Alene, the Trust's provisions for distribution in the event Alene predeceased Decedent, and "ascrib[ing] to [Decedent] an intention . . . to accommodate a subsequent event, i.e., his marriage to [Appellant], that did not exist and was not even contemplated [in 2012]."

As we noted above, Alene's rights under the Trust lapsed at her death and are not transferable to another party. *Alexander*, 497 S.W.3d at 328-29. We ascertain Decedent's intent from the words he used, and do not attempt to achieve a more "equitable" distribution. *Boone Cty. Nat'l Bank v. Edson*, 760 S.W.2d 108, 111 (Mo. banc 1988). "We endeavor to ascertain the settlor's intent at the time of the creation of the trust." *Blasdel*, 141 S.W.3d at 443. The Trust's provisions for Decedent's wife extinguished at Alene's death. Decedent never executed an amendment including Appellant in the Trust. On these facts, there is no genuine issue of

10

material fact and Respondent was entitled to judgment as a matter of law. *Germania Bank*, 810 S.W.2d at 105.

Accordingly, the trial court correctly dismissed Appellant's breach of trust claim, concluding Appellant lacked standing to bring a breach of trust claim against Respondent because she was not a beneficiary of the Trust. *Stabler v. Stabler*, 326 S.W.3d 561, 565 (Mo. App. E.D. 2010).

Point I is denied.

*Point II: The Trial Court Properly Dismissed Appellant's Claim the Third Amendment to the Trust was Executed*

Appellant's petition for declaratory judgment asked the trial court to declare Decedent's Third Amendment to the Trust was valid and effective, making Appellant a beneficiary of the Trust. The trial court dismissed Appellant's claim because it was undisputed Decedent did not formally execute the Amendment or substantially comply with the Trust's requirement that alterations or amendments could only be executed "by signing a written instrument which shall be effective upon delivery to the trustee." In reviewing a motion to dismiss, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action . . . . If the motion to dismiss can be sustained on any ground alleged in the motion, the trial court's ruling will be affirmed." *Howard v. SSM St. Charles Clinic Med. Group, Inc.*, 364 S.W.3d 242, 244 (Mo. App. E.D. 2012).

In Point II, Appellant claims Decedent intended to make her a beneficiary of the Trust and argues the trial court erred by finding he did not substantially comply with the Trust's amendment requirements. Appellant reiterates Decedent and his attorneys were working on a draft Third Amendment in the months before his death and argues this is proof of his intent to include her as a beneficiary. Appellant further argues Decedent's email correspondence with his

11

attorney substantially complied with section 456.6-602.3[5] and the Trust's requirement he "sign[] a written instrument, which shall be effective upon delivery to the Trustee."

Respondent argues the trial court correctly dismissed Appellant's claim the Third Amendment was executed because Appellant failed to plead facts indicating Decedent signed and delivered a "written instrument" expressing his intent. Respondent notes the trial court found Appellant only pled facts indicating: (1) Decedent "told his attorney that he *would* be amending the Trust due to his marriage" (emphasis in original); (2) Decedent "communicated with friends and advisors that he had gotten married;" (3) in June 2014, Silver "provided a draft of the Third Amendment" to Decedent; and (4) Decedent asked Silver to draft the Third Amendment and Decedent reviewed the draft in his capacity as grantor-trustee. Respondent argues the trial court correctly found the "requirement of a written instrument to amend a trust was not a waivable requirement" and correctly found Appellant's failure to plead facts indicating such an instrument existed was fatal to her claim. Finally, Respondent argues the trial court correctly found Decedent's alleged statements of intent to amend the Trust were merely precatory.

Where instructions in a trust instrument are clear and unambiguous, the intent of the grantor when the trust was created governs and subsequent modifications are effective only in the manner expressed in the trust instrument. *Banks v. Central Trust and Inv. Co.*, 388 S.W.3d 173, 176 (Mo. App. E.D. 2012). The settlor can modify the trust only in the manner or under the circumstances provided by the trust. *Id.* at 176-77. "The requirement that any amendment to or revocation of the trust be effectuated through a written instrument executed by the settlor serves

---

[5] Section 456.6-602.3(1) provides, "[t]he settlor may revoke or amend a revocable trust: (1) if the terms of the trust provide a method of amendment or revocation, by substantially complying with any method provided in the terms of the trust . . . ."

a very significant purpose. It protects the integrity of the trust, operating similarly to the Statute of Frauds." *Estate of Meyer v. Presley*, 469 S.W.3d 857, 863 (Mo. App. W.D. 2015).

Appellant's claim Decedent substantially complied with the Trust modification provision fails. The Court of Appeals for the Western District held substantial compliance is more limited than Appellant suggests in *Estate of Meyer*: "[w]hile the requirement of *delivery* of the written instrument . . . might arguably be waivable by the trustee under certain circumstances, a question we need not and do not decide herein, the other requirements for revocation are most certainly not waivable . . . ." 469 S.W.3d at 836 (internal citations omitted). The Trust permitted modification "*only* by signing a written instrument, which shall be effective upon delivery to the Trustee" (emphasis added). Appellant cites no authority indicating Decedent's actions would meet the substantial compliance requirements of section 456.6.-602.3. Dismissal was therefore proper because the facts pled cannot support the cause of action. *Howard*, 364 S.W.3d at 244.

Point II is denied.

*Point III: Appellant Cannot Invade the Trust as an Omitted Spouse*

Appellant asked the trial court to declare Appellant qualifies as an omitted spouse entitled to a share of the assets distributed in Decedent's will and held by the Trust. Appellant further asked the court to declare she is entitled to an intestate share of the Trust. Appellant argued her status as an omitted spouse entitled her to also invade the Trust because it is part of Decedent's "augmented estate." The trial court granted partial summary judgment to Respondent, finding (1) Appellant is an omitted spouse entitled to take from Decedent's probate estate but *not* his augmented estate, including the Trust and (2) reserving calculation of the value of Appellant's share.[6] The trial court found Appellant was not entitled to assets in the Trust because the augmented estate is only relevant to the calculation of a spousal elective share, *not* to an omitted

---

[6] The trial court also denied Respondent's motion to dismiss.

spouse's intestate share. The trial court further found section 474.235 limits its reach to spouses omitted from the decedent's will and does not entitle omitted spouses to invade a trust. The parties do not dispute Appellant is an omitted spouse entitled to inherit from Decedent's probate estate under section 474.235.[7]

In Point III, Appellant asserts the trial court erred by granting partial summary judgment finding she was not entitled to inherit from Decedent's augmented estate, including the Trust. We will affirm summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Thomas*, 810 S.W.2d at 105.

Appellant argues the trial court erred by finding her share as an omitted spouse did not include the assets held in the Trust. Appellant asserts Decedent's decision to hold nearly all his assets in the Trust defeated the intent of section 474.235 and constituted a "transfer" in fraud of marital rights. Appellant further argues Decedent's estate plan contravened her marital rights because his decision to place nearly all his assets in the Trust left few assets in the probate estate for her to inherit as an omitted spouse. Appellant concedes in her brief there is "no Missouri precedent on point" while urging this Court to hold Decedent's failure to move his assets out of the Trust after marrying Appellant was a "deemed transfer" as a matter of public policy, reasoning similarly situated settlors may attempt to use trusts to "hide" assets from their spouses.[8]

Respondent argues Appellant abandoned her claim she was entitled to a share of Decedent's augmented estate and now raises an unpreserved claim of fraud of marital rights. We

---

[7] Section 474.235 provides: "If a testator fails to provide by will for his surviving spouse who married the testator after the execution of the will, the omitted spouse shall receive the same share of the estate he would have received if the decedent left no will, unless it appears from the will that the omission was intentional or that the testator provided for the spouse by transfer outside the will . . . ."

[8] Appellant does not argue Decedent was trying to hide assets from her. She maintains her argument Decedent intended to include her as a Trust beneficiary.

14

agree. Appellant argued to the trial court her status as an omitted spouse entitled her to also invade the Trust because it is part of Decedent's augmented estate. Appellant did not argue a fraud of marital rights to the trial court. This Court "will not convict a trial court of error for an issue not presented for its determination." *Dotson v. Dillard's, Inc.*, 472 S.W.3d 599, 603 n.2 (Mo. App. W.D. 2015). Parties are "bound by the position [they] took in the trial court, and we can review the case only upon those theories." *Sheedy v. Missouri Highways and Transp. Comm'n*, 180 S.W.3d 66, 70 (Mo. App. S.D. 2005).

Even if Appellant's claim was preserved, it would fail. Fraud of marital rights was a common law equitable claim – now codified in section 474.150 – available to surviving spouses to defeat a conveyance or transfer of property made by a decedent spouse "without consideration and with the intent and purpose to defeat the surviving spouse's marital rights in the decedent's property." *Carmack v. Carmack*, 603 S.W.3d 900, 905-06 (Mo. App. W.D. 2020) (alterations omitted). "The central inquiry was whether the decedent spouse conveyed or transferred property 'with the intent and purpose to defeat' the surviving spouse's marital rights." *Id*. at 906. "Our courts have consistently applied the statute to any asset in which the surviving spouse had a marital right or interest that could have been recovered in the decedent spouse's estate but for a conveyance or transfer *during the marriage*." *Id*. (emphasis added).

Appellant admits Decedent transferred his assets to the Trust years before the marriage and pled no facts about Decedent's intent. These facts are dispositive. Section 474.150, a fraud of marital rights, is inapplicable to Appellant.

Point III is denied.

15

*Point IV: The Trial Court did not Abuse its Discretion by Awarding Attorneys' Fees*

A. Standard of Review

Where an award of attorney's fees is authorized by law, we review a trial court's award of fees for abuse of discretion. *Berry v. Volkswagen Grp. of Am., Inc.*, 397 S.W.3d 425, 430 (Mo. banc 2013). An award of attorney's fees is an abuse of discretion and requires reversal only if it is "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *City of Byrnes Mill v. Limesand*, 599 S.W.3d 466, 477 (Mo. App. E.D. 2020).

B. Analysis

The trial court held a hearing on the parties' respective motions for attorneys' fees on January 3-4, 2019. The court exercised its statutory authority to award fees to Respondent under section 456.10-1004,[9] finding Appellant "pursued multiple and conflicting theories of recovery," "mischaracterized the Court's statements," and "prosecuted this case with nothing short of abandon. [She has] refused to admit defeat despite a plethora of decisions against [her] position." Further, the trial court found Appellant's conduct during discovery caused Respondent to "incur substantial costs, expenses, and fees which ultimately will be borne by the Trust and the beneficiaries." The trial court found Appellant's "groundless and unsuccessful litigation" was vexatious and justified awarding attorneys' fees to Respondent.

In Point IV, Appellant argues the trial court erred by awarding attorneys' fees to Respondent and denying her motion for attorneys' fees. Appellant first claims the trial court's fee award was an abuse of discretion because the court's dismissal and summary judgment

---

[9] Section 456.10-1004 provides: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."

rulings in Points I-III were incorrect.  For the reasons discussed above, the trial court did not err in its judgment on the merits.

Appellant further argues "justice and equity" did not require the court to award attorneys' fees to Respondent because her conduct was not frivolous, egregious, or vexatious.  She asserts the trial court made six erroneous findings in deciding to award fees to Respondent that justify reversal.

First, Appellant argues the facts show Appellant's conduct has not been frivolous, egregious, or vexatious.  She claims her sole purpose was "to effect her late husband [Decedent's] express wishes that his financial assets would be used to care for [Decedent's] daughter Alison and his widow [Appellant], and that [Appellant] would care for Alison." Appellant passes blame onto the Husch Blackwell defendants, arguing their erroneous legal advice and alleged conflicts of interest instigated the litigation and their "constant obstructionist litigation tactics" escalated the time and expense required to resolve it.

We disagree.  Appellant's claims against the Husch Blackwell defendants were severed from this case and are not before us.  Appellant's choices about how she wanted to litigate were hers.  As discussed in Points I-III, Decedent made no "express wishes" indicating Appellant should have the right to inherit from the Trust, and Appellant's claims to the contrary are baseless.

Second, Appellant claims the trial court "ignore[d]" her life-long friendship with Decedent and Alene before Alene's death and Respondent's alleged admission Appellant is entitled to take from the Trust.  Respondent argues, and we agree, Appellant's friendship with Alene and Decedent is irrelevant to the decisions Appellant made in pursuing this litigation.

Further, nothing in the record supports Appellant's claim Respondent ever conceded she was entitled to take the $2.3 million share of the Trust she pursues here.

Third, Appellant claims the trial court erroneously found the litigation was baseless and unexpected. Appellant cites Silver's email correspondence with Respondent's wife, in which Silver states the estate would need to hire counsel if Appellant sued the estate. At most, the documents Appellant cites suggest Respondent knew Appellant might sue in early 2015. The documents do not establish Respondent conceded the lawsuit has merit.

Appellant's fourth argument largely repeats her claims about Husch Blackwell's role in the expanded scope of litigation. Again, her claims against Husch Blackwell are not before us, and they are irrelevant to whether Appellant's conduct in pursuing her claims was vexatious.

Fifth, Appellant accuses the trial court of finding her purpose in suing the estate was "primarily to inflict harm" on its innocent beneficiary, Alison. Appellant argues this conclusion is incorrect because she had a good relationship with Alison and Alison's care is largely funded by sources other than the Trust. Respondent correctly points out Appellant's claim mischaracterizes the record and the trial court's conclusions in the same way Appellant mischaracterized the record before the trial court.

The trial court did not accuse Appellant of litigating with the purpose of inflicting harm on Alison; the court said Appellant litigated "without any concern for the expenses being incurred by or for the protection of the Trust or the interest of [Alison]." Appellant has admitted her claim was an "overstatement" and apologized for it in briefing to the trial court on May 30, 2020. It is unclear why she now raises it again to argue the trial court abused its discretion in awarding fees to Respondent. To the extent Appellant argues Alison was not the intended

18

beneficiary of the Trust, we note the Trust provided if Alene predeceased Decedent, the Family Trust was to be funded and the Marital Trust was not.

Sixth, Appellant argues the trial court erroneously found she mischaracterized the court's conclusions in its orders and argues "there are no examples of such misconduct." Appellant's position is refuted by reviewing the previous paragraph, which shows how Appellant mischaracterized the trial court's findings in briefings to the trial court and to this Court on appeal.

Finally, Appellant argues her victories on some motions before the trial court justify a reduction of the fee award. Appellant notes she won discovery motions and a motion to recover the statutory family allowance. Respondent notes section 456.10-1004 does not require fees to be awarded strictly based upon which party won which motion; rather, fees may be awarded as justice and equity require.

The trial court is an expert on attorney's fees and has discretion to determine the fee award. *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 613-14 (Mo. App. E.D. 2009). We will only reverse if "the award is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Limesand*, 599 S.W.3d at 477. Nothing in the record suggests the trial court's fee award lacked careful consideration or shocked the sense of justice.

Point IV is denied.

**Conclusion**

For the reasons stated above, the judgment is affirmed.

_____
Philip M. Hess, Judge

Gary M. Gaertner, Jr., P.J. and
Michael E. Gardner, J. concur.